**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

ENGINES SOUTHWEST, INC.                CIVIL ACTION NO. 03-1460

VERSUS                                 JUDGE S. MAURICE HICKS, JR.

KOHLER CO.                             MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion to Substitute Plaintiff under Rule 17(a) (Record Document 149) filed by Plaintiff Engines Southwest, Inc. ("ESW, Inc."). Defendant Kohler Co. ("Kohler") opposes the motion. See Record Document 151. The motion came on for oral argument on April 13, 2006. See Record Documents 162 & 163. Both parties submitted post-argument briefs. See Record Documents 164-166. Upon due consideration and after a thorough review of the record, including all written briefs and the oral arguments presented by both parties, the Court denies the Motion to Substitute Plaintiff under Rule 17(a) filed by Plaintiff ESW, Inc.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**.

Both the factual and procedural history of this case, up to the filing of the Motion to Substitute Plaintiff under Rule 17(a), have been set forth in previous Memorandum Rulings of this Court. See Record Documents 100 & 141. Those facts and procedural history are adopted by reference.

Prior to the filing of the Motion to Substitute Plaintiff under Rule 17(a), this Court ruled on the issue of liability and granted summary judgment in favor of ESW, Inc. See Record Document 100. The Court held that ESW, Inc. was a "dealer" and was afforded

the protection of the Louisiana Wholesaler Act. See id. at 12. The Court further ruled that Kohler had violated the statutory termination provisions of the Louisiana Wholesaler Act. See id. at 13.

In a scheduling order dated January 13, 2006, this case was set for jury trial on August 14, 2006 on the issue of damages. See Record Document 148. Shortly thereafter, on February 27, 2006, Plaintiff Engines Southwest, Inc. filed a Motion to Substitute Plaintiff under Rule 17(a). See Record Document 149. In the motion, Engines Southwest, Inc. sought to substitute Grayson Holdings, Inc. as the real party in interest. See id. On March 17, 2006, Kohler filed its opposition to the motion to substitute, arguing that Kohler had a written contract with Engines Southwest, Inc., not Grayson Holdings, Inc. See Record Document 151. Kohler also requested oral argument on the Motion to Substitute Plaintiff under Rule 17(a). See id.

The motion came on for oral argument on April 13, 2006. See Record Document 163. At the conclusion of the oral argument, the Court upset all deadlines, other than the August 14, 2006 trial date, set forth in the January 13, 2006 scheduling order. See id. On June 14, 2006, the parties filed a joint motion to continue the pretrial conference and trial in the instant matter. See Record Document 168. The Court granted the motion to continue; thus, the order issuing with the instant Memorandum Ruling will also set a scheduling conference for the purpose of selecting a new trial date and all other corresponding pretrial deadlines.

## II. LAW AND ANALYSIS.

### A. Federal Rule of Civil Procedure 17(a).

As stated previously, Engines Southwest, Inc. seeks to substitute Grayson Holdings, Inc. as the real party in interest under Federal Rule of Civil Procedure 17. Rule 17 states in pertinent part:

> (a) Real Party in Interest. ***Every action shall be prosecuted in the name of the real party in interest***. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
>
> (b) Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. ***The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized***. . . .

F.R.C.P. 17 (emphasis added).

Under the plain language of Rule 17(b), the issue of a corporation's capacity to sue or be sued shall be determined by Louisiana law. Louisiana Civil Code Article 24 states:

> There are two kinds of persons: natural persons and juridical persons. A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a **corporation** or a partnership. The personality of a juridical person is distinct from that of its members.

La. C.C. Art. 24 (emphasis added). Louisiana Code of Civil Procedure 690 further provides that "a domestic corporation . . . has the procedural capacity to sue to enforce its rights in the corporate or company name." La. C.C.P. Art. 690; see also Bain v. Middleton, 2000-CA-2630 (La.App. 4 Cir. 11/14/01), 802 So.2d 837, 840 (stating that in Louisiana, the rule

of law is that only a corporation has the procedural capacity to sue to enforce its rights); Casson v. Hartford Ins. Co., 548 So.2d 66, 69 (La.App. 3 Cir. 1989) ("As a distinct legal entity, a corporation may sue or be sued.").

Engines Southwest, Inc., a Louisiana corporation domiciled in Shreveport, Louisiana, was formally incorporated on March 2, 1988. See Record Document 151, Exhibit 1. The corporation had previously been known as Grayson-Louisiana, Inc. and changed its name to Engines Southwest, Inc. on January 29, 1993. See id. Here, there is no dispute that ESW, Inc. was and is a validly formed corporation and ESW, Inc. does not argue that it does not have the capacity to sue Kohler under Louisiana law. Rather, ESW, Inc. argues that substitution in this case is appropriate because "subsequent investigation has disclosed that, while the contract with Kohler Co. was in the name of 'Engines Southwest,' in fact the party which engaged in commerce with defendant was Grayson Holdings, Inc." See Record Document 149 at 1. ESW, Inc. maintains that "Engines Southwest" is separate and distinct from ESW, Inc. and that "Engines Southwest" was operated as an unincorporated division of Grayson Holdings, Inc. See id. ESW, Inc. further argued in both its reply brief and during oral argument that ESW, Inc. never did any business and, in reality, "Engines Southwest" was the entity that carried on the "economic activity" and the business of distributing Kohler's products. See Record Document 154 at 1.

**B.  Privity of Contract.**

"It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach." Cibran Enterprises, Inc. v. BP Products North America, Inc., 365 F.Supp.2d 1241, 1251 (S.D. Fl. 2005). Thus, the Court first begins its

analysis of whether a substitution under Rule 17(a) is proper in this case with an examination of the distributor agreement. The "Kohler Engine Distributor Agreement" states:

> **THIS AGREEMENT** is by and between Kohler Co., a Wisconsin corporation located at Kohler, Wisconsin 53044 ("Kohler") and <u>Engines Southwest</u>, corporation located at <u>Shreveport, Louisiana</u> ("Distributor").

Record Document 151, Exhibit 3. The terms "Engines Southwest" and "Shreveport, Louisiana" were typed onto the form and were not part of the boilerplate language. All other terms in the above-referenced paragraph were standard, boilerplate language.

ESW, Inc. places great weight on the fact that the word "corporation" is part of the agreement's boilerplate language and that the word "corporation" appears after the blank for the party's name and after a comma. <u>See</u> Record Document 154 at 2. Based on the context of the printed form, ESW, Inc. argues that the name of the entity "Engines Southwest" controls and that ESW, Inc. was not a party to the contract. <u>See id.</u>

During oral argument, ESW, Inc. also argued that under Title 12 of the Louisiana Revised Statutes, a corporation must have in its name either ", Inc." or have the word "Corporation" as part of its proper name. ESW, Inc. was clearly referring to Title 12, Louisiana Revised Statutes, Section 23(A), which states:

> The corporate name, except in cases of railroad, telegraph and telephone corporations, shall contain the word "Corporation," "Incorporated" or "Limited," or the abbreviation of any of those words, or may contain instead the word "Company" or the abbreviation "Co." if the latter word or abbreviation is not immediately preceded by the word "and" or the symbol "&."

La. R.S. 12:23(A).

While it is true that Louisiana Civil Code Article 2056[1] directs that "a contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party," this Court does not find "doubt" in this instance. Rather, the Court applies Louisiana Civil Code Article 2046, which states:

> When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.

La. C.C. Art. 2046. The Court finds that regardless of whether the contract read "<u>Engines Southwest, Inc.</u>, corporation," "<u>Engines Southwest, a Louisiana</u> corporation," or "<u>Engines Southwest</u>, corporation," the distributor's corporate entity/status, especially as it appeared to Kohler at the time the contract was entered into, was in compliance with Louisiana's Title 12 statutes and was clear, explicit, and lead to no absurd consequences.[2] The distributor, under the terms of the contract, was "Engines Southwest, corporation," which this Court finds to clearly and explicitly mean Engines Southwest, Inc., and not the unincorporated "Engines Southwest" or Grayson Holdings, Inc. Based on this finding alone, the Court finds that no further interpretation may be made in search of the parties' intent and that ESW, Inc. is the real party in interest. See <u>The Bevill Co., Inc. v. Sprint/United Mgmt. Co.</u>,

---

[1]As this case is before this Court on diversity of citizenship subject matter jurisdiction, this Court, under <u>Erie</u>, is bound to apply Louisiana substantive law. See <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 58 S.Ct. 817 (1938).

[2]Based on Kohler's submissions, this Court believes that at the time the instant distributor agreement was formed, Kohler believed it was contracting with ESW, Inc. Further, the Court notes that the distributor agreement contained a provision that prohibited the assignment or modification of the agreement unless such assignment or modification was agreed upon by the parties in writing. Nowhere is there a counterletter to Kohler disclosing the role of Grayson Holdings, Inc. *vis a vis* ESW, Inc. and there is no amendment or attachment to the contract identifying or substituting Grayson Holdings, Inc. as the true contracting party.

No. 01-2524, 2004 WL 2278582, *2 (D.Kan. Sept. 2, 2004), <u>rev'd and remanded on other grounds</u>, 154 Fed.Appx. 49 (10th Cir. 2005) ("In an action for breach of contract, the corporation named in the contract is the real party in interest.").

Notwithstanding, Kohler also notes that the most recent "Kohler Engine Distributor Agreement," dated May 25, 1995 was signed by Al Rich ("Rich") as President of the Distributor. <u>See</u> Record Document 151, Exhibit 3. On August 12, 2003, Rich executed an affidavit in conjunction with ESW, Inc.'s Motion for Summary Judgment filed on that same date. Rich stated in his affidavit that he was "Chief Executive Officer of Engines Southwest, Inc." and that "Engines Southwest, Inc. and Kohler Co. have been parties to a central distributor agreement for many years." Record Document 161, Exhibit 1. Kohler construes this affidavit as a judicial admission by ESW, Inc. that it, not the unincorporated "Engines Southwest" or Grayson Holdings, Inc., was the contracting party to the distributor agreement. There is no dispute that this affidavit was drafted by ESW, Inc. and was signed by Rich. Just as in the distributor agreement, there is no mention of Grayson Holdings, Inc. in this affidavit.

This Court does not dispute that "[a] Rule 17(a) substitution should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." <u>Cibran Enterprises, Inc. v. BP Products North America, Inc.</u>, 365 F.Supp.2d 1241, 1251-1252 (S.D. Fl. 2005) (citing <u>Advanced Magnetics, Inc. v. Bayfront Partners, Inc.</u>, 106 F.3d 11, 20 (2nd Cir. 1997)). Yet, the Court finds that the substitution sought in this case is not merely a formal name change seeking to make a technical correction in the name of a corporation. The substitution also alters the original complaint's factual allegations as to the participants, in that the complaint

states nothing about the unincorporated "Engines Southwest" or Grayson Holdings, Inc. The basis for the instant substitution is that Grayson Holdings, Inc. controlled the economic activity of "Engines Southwest." This Court has ruled that ESW, Inc., not "Engines Southwest," was a party to and was in privity with the distributor Kohler. Kohler is entitled to rely on the distributor agreement, which clearly evinces the corporate status of ESW, Inc. Thus, the fact that Grayson Holdings, Inc. may have controlled the economic activity of "Engines Southwest" is not a sufficiently valid reason for substitution at this very late stage in the litigation.[3] Further, this case centers on the termination of the distributor agreement. Kohler could not terminate, properly or improperly, a distributor agreement with Grayson Holdings, Inc. because Kohler had no reason to believe that Grayson Holdings, Inc. was a party to the distributor agreement at issue in this case.

Taken from the viewpoint of Kohler and due to the contractual provision of the distributor agreement, substitution of Grayson Holdings, Inc. as the real party in interest is not appropriate in this instance. Accordingly, the Court denies the Motion to Substitute Plaintiff under Rule 17(a) filed by ESW, Inc.

---

[3]In both its briefs and during oral argument, Kohler points to the fact that ESW, Inc. has not filed a corporate disclosure statement under Federal Rule of Civil Procedure 7.1. The Court finds this of great interest since ESW, Inc. was ordered on August 7, 2003, almost three years ago, to file a corporate disclosure statement. See Record Document 5. As argued by Kohler, this Court finds that such failure is partially to blame for the fact that a motion to substitute plaintiff was not filed until two and a half years into this litigation. The Court further finds that ESW, Inc.'s failure to file a corporate disclosure statement is relevant to the defense of "inadvertence," which will be discussed in the context of judicial estoppel in section II(C) of the instant Memorandum Ruling.

### C. Judicial Estoppel.[4]

Notwithstanding the Court's denial of ESW, Inc.'s motion on the grounds of privity of contract and the principles of Rule 17, the Court also denies the Motion to Substitute Plaintiff under Rule 17(a) on the basis of judicial estoppel. The purpose of the doctrine of judicial estoppel is "to protect the integrity of the courts – preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it." Ahrens v. Perot Systems Corp., 205 F.3d 831, 833 (5th Cir. 2000) (internal citations omitted). Judicial estoppel "is a common law doctrine by which a party who has assumed one position in [its] pleadings may be estopped from assuming an inconsistent position." Id. The Fifth Circuit has recognized two restrictions on the application of the doctrine: (1) the doctrine may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position. See id.

"Generally, judicial estoppel is invoked where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." In re Superior Crewboats, Inc., 374 F.3d 330, 334 -335 (5th Cir. 2004). Judicial

---

[4] At the close of the oral argument on April 13, 2006, the Court ordered the parties to submit briefs on the issues of estoppel and/or detrimental reliance. Specifically, the Court asked for briefs addressing whether an estoppel doctrine applied in this case due to a consistent and concerted series of actions by ESW, Inc. ESW, Inc. submitted a brief on the issue of detrimental reliance (Record Document 164) and Kohler submitted a brief on the issue of judicial estoppel (Record Document 165).

If the Court were to apply the doctrine of detrimental reliance to the instant matter, then it would be applying the doctrine as a defense to the motion to substitute. Yet, in Louisiana, detrimental reliance is recognized as a theory of recovery, not a defense to a claim. Accordingly, the Court finds that detrimental reliance is inapplicable to this case and proceeds to an analysis of the applicability of judicial estoppel.

estoppel is designed to protect the judicial system, not the litigants; therefore, the party relying on the doctrine of judicial estoppel is not required to demonstrate a detrimental reliance and/or prejudice. See In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999). Notwithstanding, the Supreme Court has reasoned that another consideration as to the applicability of judicial estoppel "is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 751, 121 S.Ct. 1808, 1815 (2001). Yet, the Supreme Court noted that this factor was not meant to establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. See id. Further, a party may assert inadvertence as a defense to judicial estoppel. See Superior Crewboats, Inc., 374 F.3d at 335 (stating that a requirement for the application of judicial estoppel is that the non-disclosure must not have been inadvertent).

Kohler argues in its post-argument brief (Record Document 165) that the elements of judicial estoppel are satisfied in this case and this Court agrees. The first element the Court must examine is whether ESW, Inc.'s position in its Motion to Substitute Plaintiff under Rule 17(a), i.e., that Grayson Holdings, Inc. is the real party in interest, is clearly inconsistent with its previous one. The Fifth Circuit has held that courts may consider both a party's sworn statements, statements made by a party's attorney, and pleadings in making this determination. See Hall v. GE Plastic Pacific PTE Ltd., 327 F.3d 391, 396 (5th Cir. 2003) ("Statements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel. . . . This Circuit has indicated that the doctrine [of judicial estoppel] applies to more than just sworn statements of a party and likewise has never specifically stated that it applies only to a party's sworn statements.").

Here, ESW, Inc.'s first amended and supplemental complaint alleges that the 1995 distributor agreement was in place between ESW, Inc. and Kohler. See Record Document 20. Further, in ESW, Inc.'s Motion for Summary Judgment filed on August 12, 2003, ESW, Inc. stated:

> Engines Southwest, Inc. files this Motion for Summary Judgment on the issue of liability only and for Permanent Injunction, seeking to demonstrate that there are no genuine issues of material fact and that, as a matter of law, Kohler is liable for the wrongful termination of its agreement with ***Engines Southwest, Inc.***, relying primarily upon La. R.S. 51:481 et. seq.

Record Document 9 at 6 (emphasis added). Further, in conjunction with that Motion for Summary Judgment, Rich executed an affidavit stating that "Engines Southwest, Inc. and Kohler Co. have been parties to a central distributor agreement for many years." Id., Exhibit 2. Based on these pleadings and sworn statements, the Court finds that the first element of judicial estoppel has been satisfied, as ESW, Inc.'s prior position that ESW, Inc. was the party to the distributor agreement is inconsistent with its present one that the unincorporated "Engines Southwest" was the party to the distributor agreement and that Grayson Holdings, Inc. is the real party in interest.

The second element the Court must consider in determining whether judicial estoppel applies in this case is whether ESW, Inc. has convinced this Court to accept its previous position that ESW, Inc. was the party to the distributor agreement. The Fifth Circuit has discussed this element at length, stating that the purpose of the "judicial acceptance" element is:

> [T]o minimize the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigate the corresponding threat to judicial integrity. The . . . court's acceptance of a party's argument could be either as a preliminary matter or as part of a final disposition. The judicial acceptance requirement does not mean that the party against whom

> the judicial estoppel doctrine is to be invoked must have prevailed on the merits. Our cases suggest that doctrine may be applied whenever a party makes an argument with the explicit intent to induce the district court's reliance.

Hall, 327 F.3d at 398-399 (internal citations and quotations omitted).

In the instant matter, this Court granted a Motion for Summary Judgment filed by ESW, Inc. on the issue of liability. See Record Document 100. This Court held that ESW, Inc. was a "dealer," was afforded the protection of the Louisiana Wholesaler Act, and that Kohler had violated the statutory termination provisions of the Louisiana Wholesaler Act. See id. at 12-13. It is clear, based on the ruling on the Motion for Summary Judgment, that this Court accepted ESW, Inc.'s argument that it was a party to the distributor agreement and actually entered judgment in favor of ESW, Inc. on the issue of liability. ESW, Inc.'s argument that no "persuasion" on the point of whether ESW, Inc. was the proper party plaintiff was attempted or accomplished because it was simply an issue that had not been raised" fails because the case law applies in the instance where a party makes an argument with the explicit intent to induce the district court's reliance. ESW, Inc. argued that it, as a party to the distributor contract, was entitled to summary judgment as to liability, the Court conducted its analysis, relied on ESW, Inc.'s argument, and granted summary judgment. Thus, the Court answers the inquiry of whether ESW, Inc. convinced this Court to accept its previous position that ESW, Inc. was the party to the distributor agreement in the affirmative.

As stated above, the Fifth Circuit has not required the party asserting judicial estoppel to demonstrate prejudice or detrimental reliance. See Coastal Plains, Inc., 179 F.3d at 205. However, because the Supreme Court has identified unfair advantage to the

opposing party and/or unfair detriment to the party asserting judicial estoppel as a relevant consideration to the doctrine's applicability, this Court will analyze whether Kohler would be unfairly prejudiced by the substitution and/or addition of Grayson Holdings, Inc. as a proper party plaintiff.

This Court has already mentioned its belief that at the time the instant distributor agreement was formed, Kohler reasonably believed it was contracting with ESW, Inc. Further, Kohler's post-argument brief is replete with rational bases for Kohler's reliance on the fact that ESW, Inc. was the party to the distributor agreement. Kohler notes that it did not communicate with Grayson Holdings, Inc. regarding the termination of the distributor agreement. Nothing in ESW, Inc.'s sworn discovery responses even remotely suggest that Grayson Holdings, Inc. was the proper party plaintiff. These facts alone suggest prejudice or at the very least some detriment to Kohler. Kohler further points to the provisions of the Louisiana Wholesaler's Act ("the Act") as evidence of prejudice. The Act applies "to ***written contracts*** . . . between any person, firm or corporation engaged in the business of selling, distributing or retailing" certain goods "any wholesaler, manufacturer or distributor of such" goods. La. R.S. 51:481 (emphasis added). While Kohler "denies that even its contract with ESW, Inc. is covered by the Louisiana Wholesaler's Act," there is no way to circumvent the role the Act plays in this case. Record Document 165 at 5. ESW, Inc. stated in its Motion for Summary Judgment that it was "relying primarily upon La. R.S. 51:481 et. seq." Record Document 9 at 6. Further, this Court held that held that ESW, Inc. was a "dealer," was afforded the protection of the Act, and that Kohler had violated the statutory termination provisions of the Act. See Record Document 100 at 12-13. Thus, if Grayson Holdings, Inc. was substituted or added as the plaintiff in the instant action, then

Kohler would be faced with potential exposure under the Act to a party litigant, with whom it did not have a written contract. The Court finds that such potential exposure under the Act to a party with whom it had no written contract would unfairly prejudice Kohler and its defenses.

Finally, the Court considers the defense of inadvertence. Kohler argues that the defense of inadvertence is inapplicable here because ESW, Inc's initial representation to this Court that it was a party to the contract "*was not a mistake.*" Record Document 165 at 9. Kohler further contends that ESW, Inc. "is not attempting to rectify a mistake," but rather having realized after years of commercial activity under the contract and two and a half years of litigation that ESW, Inc. did not actually receive the revenues generated by the contract, ESW, Inc. seeks to substitute or add a party that was never in privity with Kohler , apparently in hopes of preserving a claim for loss of income or profits. See id. at 10. Kohler maintains that ESW, Inc. cannot, by relying on inadvertence, avoid the application of judicial estoppel because it chose to organize its corporate affairs in a manner that precludes it from having a potential claim for lost profits. See id. at 10. Conversely, ESW, Inc. argues that the defense of inadvertence is applicable in this case because Kohler "cannot show that plaintiff had any motivation to 'conceal' anything." Record Document 166 at 4.

As stated previously, a party may assert inadvertence as a defense to judicial estoppel. See Superior Crewboats, Inc., 374 F.3d at 335 (stating that a requirement for the application of judicial estoppel is that the non-disclosure must not have been inadvertent). Fifth Circuit case law also holds that ESW, Inc.'s failure to disclose Grayson Holdings, Inc. as the real party in interest would be considered inadvertent only if ESW,

Inc. either lacked knowledge of Grayson Holdings, Inc.'s position as the real party in interest or had no motive for its concealment. See Superior Crewboats, Inc., 374 F.3d at 335. Further, in Coastal Plains, Inc., the Fifth Circuit cited with approval the Third Circuit's reasoning in Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3rd Cir. 1996), wherein the court reasoned that the doctrine of judicial estoppel was not intended to obviate all inconsistencies; rather, it was designed to prevent litigants from playing fast and loose with the courts. See Coastal Plains, Inc., 179 F.3d at 207. The Ryan court went on to note that judicial estoppel is inapplicable where the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court. See id., 179 F.3d at 207 (citing Ryan Operations G.P., 81 F.3d at 362).

In this case, this Court does not believe that ESW, Inc. had the malevolent purpose of "playing fast and loose" with the Court when it originally represented that it, not the unincorporated "Engines Southwest" was the party to the distributor agreement, and now contends that Grayson Holdings, Inc. is the real party in interest. This lawsuit was filed on August 4, 2003, almost three years ago. During those almost three years, the plaintiff has been represented by two different law firms. Yet, despite being represented by able counsel, the Motion to Substitute Plaintiff under Rule 17(a) was not filed until February 27, 2006, two and a half years into the litigation. Further, during oral argument, Kohler stated that it was notified as early as November 2005 that substitution might be an issue, yet the Motion to Substitute Plaintiff under Rule 17(a) was not filed until three months later. While discovery has been ongoing in this case, the record reflects that plaintiff has "muddied" the issues of the economic activity of ESW, Inc., the corporate status of ESW, Inc., and the corporate organization of Grayson Holdings, Inc. ESW, Inc. objected to discovery targeted

at identifying the stockholders of ESW, Inc., as well as discovery requesting that ESW, Inc. "break down the total amount of revenue by ESW, Inc." from certain manufacturers for the calendar years 2000, 2001, 2002, and 2003. See Record Document 165, Exhibit A, Interrogatory Numbers 1 and 5. When asked to identify potential witnesses, ESW, Inc. did not identify officers or employees of Grayson Holdings, Inc. See id., Exhibit A, Interrogatory Number 8. ESW, Inc. has also, to date, failed to comply with Federal Rule of Civil Procedure 7.1's requirement for a corporate disclosure statement, even after being ordered to file such disclosure on August 7, 2003. See Record Document 5.

This Court also questions ESW, Inc.'s delay in notifying this Court of the substitution issue. If ESW, Inc. alerted Kohler in November 2005 as to the possibility of substitution, why was this issue not brought to Court's attention during the November 8, 2005 scheduling conference? See Record Document 145. If the substitution issue had not yet arisen, ESW, Inc. had ample time to notify the Court of the issue before entry of the scheduling order on January 13, 2006, which set an August 14, 2006 trial date. See Record Document 148. Coupled with Kohler's plausible argument that ESW, Inc.'s reasoning behind its Motion to Substitute Plaintiff under Rule 17(a) was the realization, after almost three years of litigation, that it had no claim for loss of income or lost profits because it did not receive the revenues generated by the distributor agreement, these facts tend to sway this Court away from applying the good faith/inadvertence defense. Record Document 145. This does not appear to be a case of blatant legal bad faith. This is not an appropriate case for the application of the "good faith" mistake/inadvertence defense. Accordingly, the doctrine of judicial estoppel applies and ESW, Inc. is estopped from asserting at this late stage in the litigation that Grayson Holdings, Inc. is the real party in

interest.

## III. CONCLUSION.

Based on the foregoing, the Court finds that there was no privity of contract between Grayson Holdings, Inc. and Kohler Co. Further, Engines Southwest, Inc. is judicially estopped from substituting Grayson Holdings, Inc. as plaintiff at this late stage in the instant litigation. Accordingly, the Motion to Substitute Plaintiff under Rule 17(a) (Record Document 149) filed by Plaintiff Engines Southwest, Inc. is denied. This Court will hold a scheduling conference on Friday, July 14, 2006 at 9:30 a.m. for the purpose of selecting a new trial date and all other corresponding pretrial deadlines.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 7th day of July, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE